UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHARLENE M. MAYHEW,

    Plaintiff,

v.                                                       Case No: 6:25-cv-320-JSS-DCI

MEDICAL DATA SYSTEMS, INC.,

    Defendant.
_____/

## ORDER

Defendant moves to dismiss the amended complaint (Dkt. 13) with prejudice on shotgun pleading grounds and for failure to state a claim. (Dkt. 17.) Plaintiff opposes the motion. (Dkt. 20.) Upon consideration, for the reasons outlined below, the court grants the motion in part and denies it in part. Specifically, the court dismisses the amended complaint without prejudice and permits Plaintiff to amend.

### BACKGROUND[1]

Plaintiff alleges that from November 2023 to August 2024, she worked as a customer service agent for Defendant, (Dkt. 13 ¶¶ 6, 8–9), and she performed her job well, (*id.* ¶¶ 7, 13). This case arises from a workplace incident involving Plaintiff and supervisor Dehane Davis that allegedly occurred on August 2, 2024, when Plaintiff

---

[1] The court accepts the well-pleaded factual allegations in the amended complaint as true and construes them in the light most favorable to Plaintiff. *See Harry v. Marchant*, 291 F.3d 767, 769 (11th Cir. 2002) (en banc).

was sixty-nine years old. (*Id.* ¶ 8.) Purportedly, during the incident, Plaintiff, a white woman, "experienced severe discrimination and hostile treatment based on her race" and her age. (*Id.*)

Plaintiff claims that the incident began when she "made a routine request" to Davis concerning account payments and, six hours later, followed up with him about the request. (*Id.*) According to Plaintiff, Davis reacted to the follow-up inquiry in a dismissive fashion "by aggressively shrugging his shoulders and shuffling papers on his desk." (*Id.*) Davis's reaction reportedly led Plaintiff to respond by "saying 'oh boy' (meaning 'oh no')." (*Id.*) Plaintiff alleges that Davis "interpret[ed] [her] generic expression as a racial statement." (*Id.*) Accordingly, Plaintiff states, Davis "became physically threatening and verbally abusive" upon hearing her comment. (*Id.*) According to Plaintiff, Davis "aggressively rose from his seat in a threatening manner that made [her] reasonably fear for her physical safety." (*Id.*) He also allegedly yelled at her: "I'm not your boy, don't ever refer to me as your boy." (*Id.*)

Plaintiff claims that this incident "forced [her] to resign her employment immediately" and "to arrange her final workplace visit to retrieve her belongings to be 'quick and without incident' due to her reasonable fears for her safety." (*Id.* ¶¶ 9, 12.) Plaintiff states that although she had "witnessed and reported multiple similar outbursts" from Davis, Defendant "failed to offer workplace etiquette training or take any remedial action to address" his behavior, and thus, Defendant "tacitly permitted [the behavior] to continue." (*Id.* ¶ 8.) Further, Plaintiff alleges that "[t]hroughout her

employment, [she] observed that younger male employees, who held similar level positions and reported to . . . Davis, were treated more favorably." (*Id.* ¶ 11.)

In light of the incident, Plaintiff initiated this action in February 2025. (Dkt. 1.) In the operative three-count amended complaint, Plaintiff sues Defendant for race discrimination under Title VII (Count I) and 42 U.S.C. § 1981 (Count III) and for age discrimination under the Age Discrimination in Employment Act (ADEA) (Count II). (Dkt. 13.) The deadline set by the initial case management and scheduling order for amending the pleadings in this case expired on October 31, 2025. (Dkt. 22 at 1.) The amended case management and scheduling order advises that motions to amend the pleadings at this stage are disfavored. (Dkt. 30 at 2 (citing Fed. R. Civ. P. 16(b)(4)).)

## APPLICABLE STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to "contain . . . a short and plain statement of [a] claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 10(b) requires the plaintiff to "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). To "promote clarity," Rule 10(b) also requires the plaintiff to state "each claim founded on a separate transaction or occurrence . . . in a separate count." *Id.* "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). Shotgun pleadings "fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. A court may dismiss a

complaint as a shotgun pleading only "where 'it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief.'" *Id.* at 1325 (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)).

In deciding a motion to dismiss for failure to state a claim, a court "accept[s] the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etailed factual allegations" are generally not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Generally, when analyzing a motion to dismiss for failure to state a claim, the court considers only the four corners of the complaint. *See Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023).

## ANALYSIS

Defendant contends that the amended complaint should be dismissed as a shotgun pleading because "Counts I and II, which are couched as disparate treatment claims, comingle allegations in apparent support of hostile work environment claims."

(Dkt. 17 at 3; *accord id.* at 12–13 ("Counts I and II contain information and allegations not related to those counts (or any other counts)[] and confusingly comingle what appear to be claims for disparate treatment and hostile work environment.").) Defendant further maintains that the amended complaint should be dismissed for failure to state a claim. (*Id*. at 3–12.) In that regard, Defendant asserts that the amended complaint inadequately alleges that Defendant discriminated against Plaintiff based on her race or her age, and in particular, Defendant argues that the amended complaint inadequately alleges that Plaintiff was constructively discharged based on her race or her age. (*Id*.) The court first explains why it need not dismiss the amended complaint as a shotgun pleading. The court then discusses Defendant's arguments regarding failure to state a claim, addressing the Title VII and section 1981 claims together[2] before turning to the ADEA claim. The court concludes by considering leave to amend.

### A. Shotgun Pleading

In Defendant's view, the amended complaint should be dismissed as a shotgun pleading because it contains "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," (*id.* at 12 (quoting *Weiland*, 792 F.3d at 1321–22)), and because it does "not separate each cause of action"—here, two

---

[2] *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 n.6 (11th Cir. 2015) (applying the "same analytical framework and proof requirements" to "employment discrimination claims under Title VII" and section 1981); *Jimenez v. WellStar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010) ("[The Eleventh] Circuit has routinely and systematically grouped Title VII and [section] 1981 claims for analytic purposes.").

different theories of employment discrimination, disparate treatment and hostile work environment—"into respective counts," (*id.* at 12–13 (citing *Weiland*, 792 F.3d at 1322–23)). *See Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015) (listing four elements for an ADEA disparate treatment claim: "(1) [the plaintiff] was a member of the protected group between the age of forty and seventy[,] (2) [s]he was subject to an adverse employment action[,] (3) a substantially younger person filled the position from which [s]he was discharged[,] and (4) [s]he was qualified to do the job from which [s]he was discharged"); *Burke-Fowler v. Orange County*, 447 F.3d 1319, 1323 (11th Cir. 2006) (listing four elements for a Title VII disparate treatment claim: "(1) [the plaintiff] is a member of a protected class[,] (2) she was subjected to an adverse employment action[,] (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated[,] and (4) she was qualified to do the job"); *see also Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020) (explaining that a hostile work environment claim requires "mistreatment based on race or other prohibited characteristics" that is "sufficiently severe or pervasive . . . to alter the terms, conditions, or privileges of employment" (quotation omitted)).

Defendant's shotgun pleading argument focuses on the allegations in paragraph 18 in Count I and paragraph 25 in Count II. (*Id.* at 13.) These paragraphs state that Plaintiff suffered discrimination "sufficiently severe and pervasive to alter the terms and conditions of [her] employment and [to] create an abusive working environment." (Dkt. 13 ¶¶ 18, 25.) Defendant asserts that because the paragraphs pertain to a hostile

work environment and not to the disparate treatment otherwise suggested by the counts' allegations, "it is unclear whether there is no basis for Plaintiff's claims or whether [she] attempts to plead additional causes of action." (Dkt. 17 at 13.) In response, Plaintiff clarifies that paragraphs 18 and 25 "in the disparate treatment counts" do not "attempt to plead . . . separate, uncaptioned hostile work environment claim[s]" but rather serve as "factual support for the adverse employment action element of her claims, which she alleges was . . . constructive discharge." (Dkt. 20 at 9 (quotation omitted).) *See Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 858 (11th Cir. 2023) ("Constructive discharge requires plausible allegations [that] the employer intentionally created conditions so intolerable that a reasonable employee would feel compelled to resign. [Satisfying this standard] is an onerous task and requires pervasive and severe conduct by the employer going beyond that required for a hostile work environment claim." (quotations omitted)).

As Plaintiff indicates, (*see* Dkt. 20 at 9), the amended complaint alleges constructive discharge as the adverse employment action for each count. (*See* Dkt. 13 ¶¶ 9, 13 (stating that "Plaintiff was forced to resign her employment immediately" and that "[t]he conditions were so intolerable that a reasonable person in Plaintiff's position would feel compelled to resign"); *id.* ¶¶ 14, 21, 27 (incorporating these statements into Counts I, II, and III).) Plaintiff thus pleads severe and pervasive misconduct not to assert hostile work environment claims but to support the constructive discharge for the adverse action element of her disparate treatment claims. *See Ounjian*, 89 F.4th at 858. Accordingly, contrary to Defendant's position, the

allegations in paragraphs 18 and 25 are connected to the disparate treatment cause of action, and the amended complaint does not combine disparate treatment and hostile work environment theories within a single count. (*See* Dkt. 17 at 12–13.) Because the amended complaint provides Defendant with "adequate notice of the claims against [it] and the grounds upon which each claim rests," the amended complaint is not a shotgun pleading. *See Weiland*, 792 F.3d at 1323. It is not "virtually impossible to know" from the amended complaint "which allegations of fact are intended to support which claim(s) for relief," *see id.* at 1325 (emphasis omitted), so the court does not dismiss the amended complaint as a shotgun pleading.

### B. Title VII and Section 1981 Claims

Defendant maintains that Plaintiff's Title VII and section 1981 claims fail because they do not plausibly allege that Defendant treated similarly situated employees outside of Plaintiff's race more favorably than it treated her or that Defendant subjected her to the alleged adverse action of constructively discharging her from her position. (Dkt. 17 at 5–10; *see* Dkt. 20 at 9.) *See Burke-Fowler*, 447 F.3d at 1323. The court agrees on both points.

First, although Plaintiff claims that "[t]hroughout her employment, [she] observed that younger male employees, who held similar level positions and reported to . . . Davis, were treated more favorably" than she was, (Dkt. 13 ¶ 11), that "[t]hese male employees were not subjected to public ridicule or aggressive behavior when making routine requests of . . . Davis," (*id.*), and that "[s]imilarly situated substantially younger employees were treated more favorably than Plaintiff," (*id.* ¶ 23), these claims

do not support that Defendant treated similarly situated employees outside of Plaintiff's race more favorably than it treated her. They instead support that Plaintiff experienced disparate treatment based on her age and her sex, not her race. The amended complaint lacks allegations supporting that Plaintiff experienced disparate treatment based on her race. In fact, the amended complaint does not identify the race of any individual other than Plaintiff, including the individuals whom Davis allegedly treated better than her; at most, the amended complaint suggests that employees outside Plaintiff's race exist and that Davis is himself one such employee. (*See id.* ¶ 32 ("[D]iscrimination impaired Plaintiff's ability to make and enforce contracts, including the terms and conditions of her employment relationship with Defendant, on the same basis as non-[w]hite employees."); *see also id.* ¶ 8 ("Davis . . . interpret[ed] Plaintiff's generic expression as a racial statement when no such connotation was intended[.]").) Absent sufficient allegations to make Defendant's race-based disparate treatment of Plaintiff plausible, the Title VII and section 1981 counts fail to state claims for relief. *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1274 (11th Cir. 2004) (affirming the dismissal of a section 1981 count for failure to state a claim when the plaintiffs "failed to identify any specific" individuals employed with the defendant who were outside the plaintiffs' race and "were treated differently" from the plaintiffs (emphasis omitted)).

Second, Plaintiff does not plausibly plead that Defendant's purported misconduct rose to the level of a constructive discharge, and she does not otherwise assert an adverse action for her claims. (*See* Dkt. 20 at 2–3, 7–9.) "To

prove . . . constructive discharge, a plaintiff must demonstrate that working conditions were so intolerable that a reasonable person in her position would have been compelled to resign." *Griffin v. GTE Fla., Inc.*, 182 F.3d 1279, 1283 (11th Cir. 1999) (quotations omitted); *see Henson v. Dundee*, 682 F.2d 897, 907 (11th Cir. 1982) ("[W]hen an employee involuntarily resigns . . . to escape intolerable and illegal employment requirements to which . . . she is subjected because of race . . . , the employer has committed . . . constructive discharge in violation of Title VII." (quotation omitted)). "[W]hether the [alleged] working conditions were sufficiently intolerable to amount to . . . constructive discharge is judged by an objective standard, not the employee's subjective feelings." *Richio v. Miami-Dade County*, 163 F. Supp. 2d 1352, 1367 (S.D. Fla. 2001). In this context, a resignation may be "voluntary even where the only alternative to resignation is possible termination for cause, criminal charges, or other unpleasant alternatives." *Davis v. Legal Servs. Ala., Inc.*, 472 F. Supp. 3d 1123, 1132 (M.D. Ala. 2020) (quoting *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995)). "The standard for proving constructive discharge is higher than the standard for proving . . . hostile work environment." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001); *accord Ounjian*, 89 F.4th at 858. This is because in the usual discrimination case, the court's "role is to prevent unlawful [employment] practices, not to act as a super[-]personnel department that second-guesses employers' business judgments." *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1254 (11th Cir. 2000) (quotation omitted).

      Plaintiff bases her constructive discharge theory on a single instance when her

supervisor, Davis, misinterpreted her use of the word "boy" in a racially negative light, prompting him to "aggressively r[i]se from his seat" and yell at her: "I'm not your boy, don't ever refer to me as your boy." (Dkt. 13 ¶ 8.) *See Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006) (instructing that the use of the word "boy" may indicate racial animus "depend[ing] on various factors including context, inflection, tone of voice, local custom, and historical usage"); *Garrett v. Tyco Fire Prods., LP*, 301 F. Supp. 3d 1099, 1118 (N.D. Ala. 2018) (describing "the use of 'boy'" as "racist language" in context). Although Plaintiff conclusorily claims to have "witnessed and reported multiple similar outbursts by . . . Davis directed at other co[]workers," she does not explain how these outbursts were similar to the single instance directed at her. (*See* Dkt. 13 ¶ 10.) The court is left to speculate as to whether the other alleged incidents also involved the use of the word "boy," for example. *See Twombly*, 550 U.S. at 555 (requiring a complaint's factual allegations "to raise a right to relief above the speculative level"). Viewed in the light most favorable to Plaintiff, her allegations do not suffice to plead a constructive discharge, and indeed, Plaintiff has not presented enough facts to meet the lower standard for claiming a hostile work environment: the purported misconduct is not severe or pervasive enough. *See Buckley v. Sec'y of the Army*, 97 F.4th 784, 797 (11th Cir. 2024) ("In evaluating the objective severity of [alleged] harassment, [courts] consider, among other factors, (1) how often the conduct occurs[,] (2) how severe the conduct is[,] (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance[,] and (4) whether the conduct unreasonably interferes with the employee's job performance." (quotation

omitted)); *see also Adams v. Austal, USA, LLC*, 754 F.3d 1240, 1250–57 (11th Cir. 2014); *Gupta v. Fla. Bd. Of Regents*, 212 F.3d 571, 584–86 (11th Cir. 2000).

As seen in published Eleventh Circuit precedent pertaining to race- and sex-based[3] hostile work environments, worse workplace misconduct than the single incident allegedly experienced by Plaintiff has failed to meet the severe or pervasive standard. For example, in *Adams*, the Eleventh Circuit affirmed summary judgments against six African-American employees alleging race-based hostile work environments. 754 F.3d at 1245. For present purposes, the court focuses on three of these employees. The first employee "worked for [the defendant] for two years," "saw his coworkers wear the Confederate flag on a regular basis," "saw racist graffiti in the men's restroom that he used on a daily basis," "heard people say [the 'n' word] but only a 'few times' over two years," and "heard about [a] noose in the breakroom, although he did not see it himself." *Id.* at 1254. The second employee, who worked for the defendant for seven months, "once overheard a white coworker, talking to other white coworkers," use racial slurs, including the "n" word, to threaten hanging and shooting someone. *Id.* at 1255. In addition, this employee "heard about comments from other coworkers," "saw several employees wear apparel with the Confederate flag," and "saw racist graffiti in the men's restrooms." *Id.* The third employee worked

---

[3] Plaintiff's amended complaint does not assert any causes of action based on sex discrimination. (*See* Dkt. 13.) However, courts routinely cite decisions on one type of discrimination as authority regarding another type of discrimination. *See, e.g.*, *Miller v. Kenworth of Dothan Inc.*, 277 F.3d 1269, 1275, 1278 (11th Cir. 2002) (citing to the sex discrimination cases *Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir. 1999), and *Coates v. Sundor Brands, Inc.*, 164 F.3d 1361 (11th Cir. 1999), in a national origin discrimination case).

for the defendant "for five and a half years, during which he 'saw a lot' of racist graffiti in two of the men's restrooms and saw white employees' paraphernalia with the Confederate flag." *Id.* at 1256. This employee "also experienced three specific instances of racial harassment": (1) his white supervisor told him, "I'm not racist[;] at home I have a color TV," (2) a coworker used the "n" word to threaten violence, and (3) "a coworker once called [the employee] 'boy.'" *Id.* at 1256–57. For each of these three employees, the Eleventh Circuit concluded that "a reasonable jury would not find that [the] workplace was objectively hostile." *Id*. at 1254–55, 1257.

Additionally, in *Gupta*, a sexual harassment case brought by a professor, the Eleventh Circuit reversed the judgment for the plaintiff because "there was insufficient evidence presented at trial to support the jury's verdict" of liability for a hostile work environment claim. 212 F.3d at 586. The plaintiff complained of incidents involving a fellow professor who acted as her supervisor insofar as he participated in the decision to hire her and was responsible for coordinating her course schedule. *Id.* at 577–78. The plaintiff asserted that the supervisor "stared at her twice, touched her ring and bracelet once, and kept asking her to lunch." *Id.* at 585. She also testified that once, on a hot day when the air conditioner was not working, she "entered [the supervisor]'s office and discovered that he had on his undershirt, but had taken his dress shirt off." *Id.* at 579. According to the plaintiff, she "offered to come back to see him later, but he said to wait and at the same time he unbuckled his belt and pulled down his zipper and started tucking his dress shirt in." *Id.* (alteration adopted and quotation omitted). The plaintiff further stated that on one occasion, the supervisor put his hand "partly

on the inside of her thigh," *id.*, and on another occasion, he "lifted the hem of her dress about four inches with his hand," *id.* (alteration adopted and quotation omitted).

After collectively considering all complained-of behavior related to sex or gender, the Eleventh Circuit in *Gupta* held that the alleged misconduct was insufficiently severe or pervasive. *Id.* at 586. The Eleventh Circuit acknowledged that the supervisor should not have touched the plaintiff's leg or dress, but it noted that the occasions on which he did were "only two incidents in a period of six or seven months." *Id.* at 585. The Eleventh Circuit also cited a Seventh Circuit case to show that a hostile work environment claim might not lie even when a supervisor "on one occasion 'put[s] his arms around [a plaintiff], kisse[s] her, squeeze[s] her, and sa[ys], "Now, is this sexual harassment?"'" *Id.* (citing *Minor v. Ivy Tech State Coll.*, 174 F.3d 855, 857 (7th Cir. 1999)). The Eleventh Circuit went so far in *Gupta* as to state that "a finding that [the plaintiff]'s complaints constitute[d] sexual harassment would lower the bar . . . to punish mere bothersome and uncomfortable conduct[] and would trivialize true instances of sexual harassment." *Id.* at 586 (quotation omitted).

Plaintiff's allegations do not show conduct as severe or pervasive as that described in *Adams* or *Gupta*, and the Eleventh Circuit found the conduct in those cases insufficient to satisfy the hostile work environment standard, to say nothing of the higher constructive discharge standard that Plaintiff must meet. "Although an isolated incident—if grave enough—may render a work environment hostile, that is not the case here." *See Mahone v. CSX Transp., Inc.*, 652 F. App'x 820, 824 (11th Cir. 2016);

*see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." (quotation omitted)); *Wolfe v. Postmaster Gen., U.S. Postal Serv.*, 488 F. App'x 465, 469 (11th Cir. 2012) (determining that alleged misconduct was "insufficient to establish harassing conduct for the purposes of a hostile work environment claim" when the misconduct was "only a single incident" (quotation omitted)); *Uppal v. Hosp. Corp. of Am.*, 482 F. App'x 394, 397 (11th Cir. 2012) (concluding that "a single instance of sexual harassment . . . in which [the plaintiff's] supervisor privately met with her, sat down next to her[,] and placed his arm around her in an unwelcomed sexual manner" could not support a hostile work environment claim (alterations adopted and quotation omitted)). Because Plaintiff's allegations do not satisfy the lower hostile work environment standard, they do not plausibly support a constructive discharge for the adverse action element of her claims, meaning that the Title VII and section 1981 counts fail to state claims for relief. Accordingly, the court dismisses Counts I and III for failure to allege that Defendant treated similarly situated employees outside of Plaintiff's race more favorably than it treated her and that Defendant subjected her to the alleged adverse action of a constructive discharge.

### C. ADEA Claim

Defendant argues that the ADEA claim also fails for two reasons. (Dkt. 17 at 10–12.) First, for the adverse action element, the claim relies on the same allegations of constructive discharge that do not suffice for the Title VII and section 1981 claims. (*Id.*) Second, Plaintiff does not allege that a younger individual replaced her. (*Id.*)

- 15 -

The court agrees. As discussed above, the amended complaint does not support a constructive discharge. *See Adams*, 754 F.3d at 1250–57; *Gupta*, 212 F.3d at 584–86; *see also Trask v. Sec'y, Dep't of Veterans Affs.*, 822 F.3d 1179, 1196 (11th Cir. 2016) (affirming summary judgment for the defendant on the plaintiffs' age-based hostile work environment claims when the plaintiffs "broadly cite[d] to several instances in which . . . management behaved rudely and made comments that [the] plaintiffs considered offensive, belittling, and humiliating," and explaining that "the plaintiffs' struggles exemplif[ied] the ordinary tribulations of the workplace" rather than actionable harassment (quotation omitted)). Further, Plaintiff does not allege that she was replaced at all, let alone by a younger individual. (*See* Dkt. 13.) *See Liebman*, 808 F.3d at 1298 (requiring an ADEA plaintiff to show that "a substantially younger person filled the position from which [the plaintiff] was discharged"); *see also O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) ("Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."). Given Plaintiff's failure to allege these adverse action and replacement elements, the court dismisses Count II for failure to state a claim. The amended complaint is therefore dismissed in its entirety.

### D. Leave to Amend

Defendant submits that the amended complaint "should be dismissed with prejudice because it fails to state a claim upon which relief can be granted." (Dkt. 17

- 16 -

at 3 (emphasis omitted).) Federal Rule of Civil Procedure 15 directs the court to "freely give" a party leave to amend a pleading before trial "when justice so requires." Fed. R. Civ. P. 15(a)(2). Consequently, in general, "where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (quotation omitted). However, the court may dismiss a complaint with prejudice under six circumstances: (1) "undue delay," (2) "bad faith," (3) "dilatory motive," (4) "repeated failure to cure deficiencies by amendments previously allowed," (5) "undue prejudice to the opposing party," and (6) futility. *Id.* Defendant does not assert any of these bases for dismissal with prejudice, (*see* Dkt. 17), and the court does not discern any of them in the record. Therefore, the court dismisses the amended complaint without prejudice and affords Plaintiff leave to amend in accordance with Rule 15. *See Miles v. Carnival Corp.*, 767 F. Supp. 3d 1368, 1376 (S.D. Fla. 2025) (observing that the court "has the discretion to grant leave to amend sua sponte").

## CONCLUSION

Accordingly:

1. Defendant's motion to dismiss (Dkt. 17) is **GRANTED in part and DENIED in part**. The motion is **granted** in that Plaintiff's amended complaint (Dkt. 13) is **DISMISSED**; the motion is **denied** in that the dismissal is **without prejudice**.

2. On or before February 16, 2026, if she can do so in good faith, Plaintiff may

submit a second amended complaint that corrects the deficiencies identified in this order.

3. The court grants Plaintiff leave to file a second amended complaint so that she can add information in support of the Title VII, ADEA, and section 1981 race- and age-based disparate treatment claims asserted in the amended complaint. (*See* Dkt. 13 ¶¶ 14–33.)  Plaintiff may choose not to bring any or all of these claims in the second amended complaint, or she may choose to bring them all, if she can do so in good faith after she corrects the pleading deficiencies identified in this order.  However, Plaintiff shall not assert other claims in the second amended complaint, unless she first satisfies Federal Rule of Civil Procedure 16(b)(4) by demonstrating "good cause" and obtaining "the [court]'s consent."  Fed. R. Civ. P. 16(b)(4).

**ORDERED** in Orlando, Florida, on January 23, 2026.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record