UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHARLENE M. MAYHEW,

Plaintiff,

v. Case No: 6:25-cv-320-JSS-DCI

MEDICAL DATA SYSTEMS, INC.,

Defendant.
___________________________________/

**ORDER**

Defendant moves to dismiss the second amended complaint (Dkt. 32) because it fails to state a claim for relief. (Dkt. 33.) Plaintiff opposes the motion. (Dkt. 34.) Upon consideration, for the reasons outlined below, the court grants the motion and permits Plaintiff to file a third amended complaint.

**BACKGROUND**

Defendant hired Plaintiff to work as a customer service agent in November 2023. (Dkt. 32 ¶¶ 4, 7.) According to the second amended complaint, Plaintiff's supervisor, Dehane Davis, created "an objectively intolerable work environment," typified by "pervasive" disparate treatment. (*Id.* ¶¶ 7, 15.) The second amended complaint identifies three discrete events, which occurred between February and August 2024, that purportedly illustrate the hostility of Plaintiff's work environment. (*See id.* ¶¶ 7–14.) First, in February 2024, Plaintiff claims that Davis told her that "a person of [her] age should be able to obtain the information" that she sought in

response to a work-related question. (*Id.* ¶ 8.) Thereafter, Plaintiff states that Davis treated her questions as a nuisance, while "simultaneously assisting younger employees." (*Id.*) Similarly, Davis would assist Black employees while treating Plaintiff and her white co-workers with hostility when they posed questions. (*Id.* ¶¶ 10–12.) Second, Plaintiff alleges that in July 2024, Davis yelled at her while she performed "a permissible activity during her own time," humiliating her. (*Id.* ¶ 9.) Third, Plaintiff asserts that, in August 2024, Davis aggressively dismissed her request to discuss a routine matter and launched into a "racially motivated verbal assault" when she expressed her dismay with the phrase "oh boy." (*Id.* ¶ 14.) Lunging at Plaintiff, Davis purportedly yelled, "I'm not your boy, don't ever refer to me as your boy." (*Id.*) Plaintiff states that the cumulative effect of these three events and her disparate treatment led her to fear for her safety and to resign that afternoon. (*Id.* ¶¶ 14–16.) Since her resignation, Plaintiff alleges that Defendant "has not hired any individuals in [her] age group," but has instead favored employees who were "substantially younger than [her]." (*Id.* ¶ 17.)

Plaintiff initiated this action by suing Defendant for age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, and for race discrimination in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. (*See* Dkt. 1.) Shortly thereafter, Plaintiff voluntarily amended her complaint. (*See* Dkt. 13.) The court dismissed the amended complaint because it failed to state a claim for relief. (*See* Dkt. 31.) Plaintiff has since

filed a second amended complaint, which alleges the same claims for relief. (*See* Dkt. 32.) Defendant now asserts that the second amended complaint should be dismissed because it fails to state a claim. (*See* Dkt. 33.)

**APPLICABLE STANDARDS**

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim upon which relief may be granted, a complaint "must contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Therefore, to satisfy Rule 8(a)(2) and survive a Rule 12(b)(6) challenge, the factual allegations in the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not do. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, "[a] complaint is plausible on its face when it contains sufficient facts to support a reasonable inference that the defendant is liable for the misconduct alleged," *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018), meaning that they "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. To meet this standard, the facts alleged in the complaint must show more than "a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

**ANALYSIS**

In Counts I and III, Plaintiff alleges that Defendant violated Title VII and section 1981 when it discriminated against her because of her race. (Dkt. 32 ¶¶ 18–21, 27–29.) Title VII and section 1981 prohibit employers from intentionally discriminating against employees based on their race, religion, or national origin. *Siddiqui v. NetJets Aviation, Inc.*, 773 F. App'x 562, 563 (11th Cir. 2019); *see* 42 U.S.C. §§ 1981(a), 2000e-2(a)(1). To state a claim under either statute, a plaintiff must plausibly allege that she "suffered an adverse employment action due to intentional racial discrimination." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015); *see Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022) ("The elements of a claim of race discrimination under [section] 1981 are . . . the same as a Title VII disparate treatment claim in the employment context."); *accord Hilliary v. FlightSafety Int'l, Inc.*, 778 F. App'x 835, 839 (11th Cir. 2019) ("The elements of a section 1981 race discrimination claim in the employment context are the same as the elements of a Title VII disparate treatment claim."); *see Langford v. Magnolia Advanced Materials, Inc.*, 861 F. App'x 383, 387 (11th Cir. 2021) ("To state a claim of racial discrimination under [section] 1981, [a] plaintiff[] must allege facts establishing: (1) that [they are] a member of a racial minority[,] (2) that the defendant intended to discriminate [against them] on the basis of race[,] and (3) that the discrimination concerned one or more of the activities enumerated in the statute."). Accordingly, "[s]ection 1981 and Title VII discrimination claims are analyzed under the same framework." *Siddiqui*, 773 F.

App'x at 563; *see Jimenez v. WellStar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010) ("[The Eleventh] Circuit has routinely and systematically grouped Title VII and [section] 1981 claims for analytic purposes."). Defendant argues that Counts I and III fail to state a claim for relief for two reasons. (Dkt. 33 at 5–7.)

First, Defendant asserts that Counts I and III do not plausibly allege that Plaintiff was subjected to intentional discrimination because of her race. (*Id.* at 5.) In the employment context, an employer discriminates against an employee when it treats her worse than her colleagues because of a protected trait. *See Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024); *Bostock v. Clayton County*, 590 U.S. 644, 681 (2020) ("As used in Title VII, the term discriminate against refers to distinctions or differences in treatment that injure protected individuals." (quotation omitted)). Still, neither Title VII nor section 1981 says how much worse the disparate treatment must be to state a claim. *See Muldrow*, 601 U.S. at 355 ("Discriminate against means treat worse . . . But neither that phrase nor any other says anything about how much worse."); *Hayes v. G&E Real Est. Mgmt. Servs.*, No. 24-CV-01459, 2025 WL 769162, at *6 (S.D.N.Y. Mar. 11, 2025) ("[T]he text of [section] 1981 is devoid of any indication that adverse actions must be material."); *Anderson v. Amazon.com, Inc.*, No. 23-CV-8347 (AS), 2024 WL 2801986, at *10 (S.D.N.Y. May 31, 2024) (finding that section 1981 is "even more categorical" than Title VII and thus there is no significance requirement for disparate treatment); *see also Martinez-Lopez v. GFA Ala. Inc.*, 797 F. Supp. 3d 1309, 1353 (N.D. Ga. 2025) (applying *Muldrow* to both Title VII and section 1981 claims at the motion to dismiss stage).

According to the second amended complaint, Davis treated Plaintiff less favorably than her Black colleagues, as he would patiently teach and assist them while responding to Plaintiff's questions with open hostility. (*See* Dkt. 32 ¶¶ 10–12; Dkt. 34 at 5.)[1] Although Defendant contends that these allegations do not "plausibly suggest that Davis' actions were motivated by Plaintiff's race," its objections have more to do with the accuracy than the sufficiency of Plaintiff's allegations. (*See* Dkt. 33.) For instance, Defendant contends that Davis was more willing to assist other team members because he was not Plaintiff's supervisor. (*See id.* at 6.) But that is not what has been alleged. (*See* Dkt. 32 ¶ 7.) At this stage of litigation, the second amended complaint "need only lay out a short statement of the claim showing that the pleader is entitled to relief." *Jackson v. Bell-South Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004); *see Shed v. Univ. of S. Fla. Bd. of Trs.*, No. 23-13746, 2025 WL 1540573, at *5 (11th Cir. May 30, 2025) ("To state a claim for race discrimination in violation of Title VII, a complaint need only provide sufficient factual allegations to 'plausibly suggest that the plaintiff suffered an adverse employment action due to intentional racial discrimination.'" (quoting *Surtain*, 789 F.3d at 1246)). Accepting the allegations in the second amended complaint as true, the court finds that Plaintiff has plausibly alleged that she was treated less favorably than the Black employees on her team. (*See* Dkt. 32 ¶¶ 10–11.) *See Henley*, 945 F.3d at 1326; *Maziar v. City of Atlanta*, No. 1:21-CV-2172-

[1] Although Plaintiff does not allege that she is a member of a racial minority, "[f]ederal law is no more tolerant of discrimination against whites than it is discrimination against members of any other race." *McCarthy v. City of Cordele*, 111 F.4th 1141, 1147 (11th Cir. 2024); *see Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 206 (2023) ("Eliminating racial discrimination means eliminating all of it.").

SDG-CMS, 2022 WL 5461329, at *6 (N.D. Ga. May 17, 2022) ("[I]n the absence of other allegations suggesting intentional discrimination, a plaintiff may satisfy her burden at the pleading stage by alleging facts plausibly suggesting that her employer treated her less favorably than a similarly situated individual not in her protected class." (citing *Glover v. Donahoe*, 626 F. App'x 926, 931 (11th Cir. 2015)).

Second, Defendant argues that the second amended complaint fails to plausibly allege that Plaintiff experienced an adverse employment action, let alone one caused by intentional race discrimination. (Dkt. 33 at 6–7.) As before, the second amended complaint alleges that Plaintiff was constructively discharged. (*Compare id.* ¶¶ 15–16, *with* Dkt. 13 ¶¶ 12–13.) "[A] constructive discharge is tantamount to an actual discharge, so it constitutes an adverse employment action." *Davis v. Legal Servs. Ala., Inc.*, 19 F.4th 1261, 1267 (11th Cir. 2021); *see Akins v. Fulton County*, 420 F.3d 1293, 1300–01 (11th Cir. 2005) ("Constructive discharge negatively affects an employee's job status, and therefore constitutes an adverse employment action."). To state a claim for constructive discharge, a plaintiff must plausibly allege that her employer "intentionally created conditions so 'intolerable' that a reasonable employee would feel compelled to resign." *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 858 (11th Cir. 2023). The plaintiff must also plausibly allege that those conditions were pervasive. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231–32 (11th Cir. 2001) (collecting cases). Whether a complaint meets this standard is determined under an objective, reasonable-employee standard, rather than a subjective standard that considers an employee's feelings. *See Burlington Northern & Santa Fe Ry. v. White* 548 U.S. 53, 68–69 (2006). A

reasonable employee does not "assume the worst" or "jump to conclusions too fast." *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536 (11th Cir. 1987). Accordingly, a resignation may be "voluntary even where the only alternative to resignation is possible termination for cause, criminal charges, or other unpleasant alternatives." *Davis*, 472 F. Supp. 3d at 1132 (quoting *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995)). This is a higher bar than is required to state a claim for a hostile work environment and thus requires that the employer's conduct be more severe and pervasive. *See Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009) ("Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim."). This elevated bar reflects the court's role in discrimination cases, which "is to prevent unlawful [employment] practices, not to act as a super[-]personnel department that second guesses employers' business judgments." *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1254 (11th Cir. 2000) (quotation omitted).

The allegations within the second amended complaint, like the amended complaint, do not show that Plaintiff experienced a hostile work environment, let alone that she suffered a constructive discharge. (*See* Dkt. 32 ¶¶ 6–16.) *See Buckley v. Sec'y of the Army*, 97 F.4th 784, 797 (11th Cir. 2024) ("In evaluating the objective severity of [alleged] harassment, [courts] consider, among other factors, (1) how often the conduct occurs[,] (2) how severe the conduct is[,] (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance[,] and (4) whether the conduct unreasonably interferes with the employee's job performance." (quotation omitted)). The Eleventh Circuit's decisions in *Adams v. Austal, USA, LLC*, 754 F.3d

1240, 1245 (11th Cir. 2014), and *Gupta v. Florida Board of Regents*, 212 F.3d 571, 586 (11th Cir. 2000), remain instructive on this point.

In *Adams*, the Eleventh Circuit considered the work environment of several employees. *See* 754 F.3d at 1245. The first employee regularly saw racist graffiti in the restroom and observed his coworkers wearing clothing depicting confederate imagery. *Id.* at 1254–55. He also heard his coworkers use racial slurs on several occasions and even heard them discuss placing a noose in the breakroom. *Id.* at 1255. A second employee similarly observed his coworkers wearing apparel with confederate imagery and regularly witnessed racist graffiti in the men's restroom, while occasionally overhearing his coworkers use racial slurs and threaten to hang and shoot someone. *Id.* The third employee encountered racially harassing rhetoric on three occasions, which included racial slurs paired with threats of violence, racially insensitive jokes, and someone calling another Black employee "boy." *Id.* at 1256–57. For each of these three employees, the Eleventh Circuit concluded that "a reasonable jury would not find that [the] workplace was objectively hostile." *Id.* at 1254–55, 1257.

In *Gupta*, the Eleventh Circuit reversed a judgment for the plaintiff because there was insufficient evidence to support the jury's verdict of liability for a hostile work environment claim. *See* 212 F.3d at 586.[2] The plaintiff asserted that her supervisor

[2] Although *Gupta* concerned allegations of sexual harassment, courts routinely cite decisions concerning one type of discrimination as authority regarding another type of discrimination. *See Miller v. Kenworth of Dothan Inc.*, 277 F.3d 1269, 1275, 1278 (11th Cir. 2002) (citing to the sex discrimination cases *Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir. 1999), and *Coates v. Sundor Brands, Inc.*, 164 F.3d 1361 (11th Cir. 1999), in a national origin discrimination case); *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73 (1986) (holding that sexual harassment, which creates a hostile or abusive work environment, qualifies as discrimination based on sex under Title VII).

"stared at her twice, touched her ring and bracelet once, and kept asking her to lunch." *Id.* at 585. She also testified that she once entered her supervisor's office and found him wearing only his undershirt. *Id.* at 579. When she offered to come back later, he unbuckled his belt and unzipped his pants before her. *See id.* On other occasions, the plaintiff's supervisor put his hand "on the inside of her thigh" and "lifted the hem of her dress about four inches." *See id.* (alteration adopted and quotation omitted). In reversing the judgment, the Eleventh Circuit held that the cumulative conduct of these events was not sufficiently severe or pervasive for a reasonable person to consider the plaintiff's work environment hostile and abusive. *Id.* at 583. The Eleventh Circuit acknowledged that the supervisor should not have touched the plaintiff's leg or dress, but it noted that the occasions on which he did were "only two incidents in a period of six or seven months." *Id.* at 585. Indeed, the Eleventh Circuit went so far as to state that "a finding that [the plaintiff]'s complaints constitute[d] sexual harassment would lower the bar . . . to punish mere bothersome and uncomfortable conduct[] and would trivialize true instances of sexual harassment." *Id.* at 586 (quotation omitted).

As before, Plaintiff's allegations do not plausibly suggest that she encountered conduct that was as severe or pervasive as that described in *Adams* or *Gupta*. (*See* Dkt. 32 ¶¶ 6–16.) *See Adams*, 754 F.3d at 1245–55, 1257; *Gupta*, 212 F.3d at 579–86. That matters because the conduct alleged in each case failed to establish a hostile work environment, let alone show that the plaintiffs were constructively discharged. *See Adams*, 754 F.3d at 1245–55, 1257; *Gupta*, 212 F.3d at 586; *see also Faragher v. City of*

*Boca Raton*, 524 U.S. 775, 788 (1998) ("[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." (quotation omitted)). Plaintiff does not discuss *Adams* in responding to the motion, but argues that *Gupta* is distinguishable, as a reasonable person in her position, "facing a physically lunging supervisor who has previously expressed bias against her age and race[,] would feel compelled to resign immediately." (*See* Dkt. 34 at 4.) Plaintiff does not develop this argument, waiving it. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014) (explaining that a party abandons issues that it raises in passing, asserts perfunctorily, buries within its brief, or uses merely to support other arguments). Even so, the court finds that Plaintiff's allegations concerning the three discrete acts of alleged discrimination are not sufficiently severe or pervasive to plausibly suggest that she was constructively discharged. (*See* Dkt. 32 ¶¶ 7–16.)

To begin, Plaintiff has not pled sufficient facts to plausibly allege that Davis' conduct was pervasive. *See Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1153–54 (11th Cir. 2020) (distinguishing allegations that a plaintiff was harassed "constantly" from the more specific allegations that a plaintiff was harassed "every day"). Although Plaintiff alleges that she experienced a "continuous pattern of hostile treatment" that was "pervasive throughout her employment," the second amended complaint lacks facts illustrating the pervasiveness or frequency of Davis' conduct. (*See* Dkt. 32 ¶¶ 7–8, 12.) Indeed, the second amended complaint focuses on three discrete incidents, spanning six months. (*See id.* ¶¶ 8, 9, 14.) Although Plaintiff asserts that Davis patiently

explained processes and answered questions for her Black colleagues, while simultaneously expressing reluctance and anger whenever she and her white contemporaries sought assistance, the second amended complaint does not allege any facts to illustrate how often this would occur. (*See id.* ¶¶ 7–16.) Nor does the second amended complaint plead facts showing how Davis' conduct affected the terms and conditions of Plaintiff's employment or her ability to enforce her employment contract. (*See id.* ¶ 29.) *See* 42 U.S.C. §§ 1981(a), 2000e-2(a)(1). *See Muldrow,* 601 U.S. at 354–55 (holding that a Title VII discrimination claim "must show some harm respecting an identifiable term or condition of employment").

More to the point, the second amended complaint does not plead facts to plausibly suggest that Plaintiff was constructively discharged because she experienced race discrimination. (*See* Dkt. 32 ¶¶ 7–16.) As discussed, Title VII and section 1981 provide "that it is unlawful for an employer to discriminate against an employee *because of* the employee's race." *Surtain*, 789 F.3d at 1245–46 (emphasis added); *see Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1014 (11th Cir. 2023) (explaining that although section 1981 does not require that race be the exclusive cause of a plaintiff's termination, "it does require [a plaintiff] to prove that but for [her] race [she] would not have" suffered an adverse employment action). *See* 42 U.S.C. § 1981(a) (guaranteeing "[a]ll persons within the jurisdiction of the United States" the "same right . . . to make and enforce contracts . . . as is enjoyed by white citizens"); 42 U.S.C. § 2000e-2(a) (identifying "race, color, religion, sex, [and] national origin" as the only classes protected by Title VII). Accordingly, when an employee claims to have been

constructively discharged in violation of either Title VII or section 1981, they must tie that action to their race. *See Henson v. Dundee*, 682 F.2d 897, 907 (11th Cir. 1982) ("[W]hen 'an employee involuntarily resigns in order to escape intolerable and illegal employment requirements' to which he or she is subjected because of race, color, religion, sex, or national origin, the employer has committed a constructive discharge in violation of Title VII." (quoting *Young v. Sw. Sav. & Loan Asso.*, 509 F.2d 140, 144 (5th Cir. 1975)); *Cowan v. Jackson Hosp. & Clinic, Inc.*, 572 F. Supp. 2d 1286, 1292 (M.D. Ala. 2008) (concluding that a plaintiff's Title VII constructive discharge claim could not succeed, as she failed to show that "the conditions leading her compelled resignation were motivated, or any way connected, to the types of discrimination or retaliation Title VII addresses"). As discussed, the court dismissed Plaintiff's amended complaint because it identified only an isolated incident of racial discrimination, which did not plausibly suggest that Plaintiff suffered a constructive discharge. (*See* Dkt. 31 at 14–15.) Plaintiff argues that the second amended complaint corrects this deficiency, as it identifies an ageist comment that Davis purportedly made and describes an instance in which Davis reportedly "exhibited unprovoked aggression" towards her. (*See* Dkt. 34 at 4 (citing Dkt. 32 ¶¶ 8–9.).) According to Plaintiff, these events demonstrate Davis' "pervasive refusal to treat [her] with the same dignity afforded to younger, Black employees." (*Id.*) Yet Plaintiff does not connect Davis' comment or his outburst to her race. (*See* Dkt. 32 ¶¶ 8–9; Dkt. 34 at 4.) That is problematic because allegations that Defendant discriminated against Plaintiff because of her age would not be relevant to determining whether Plaintiff can show that it

discriminated against her because of her race. *See Surtain*, 789 F.3d at 1245–46; *Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1014; *Cowan*, 572 F. Supp. 2d at 1292. *See* 42 U.S.C. §§ 1981(a), 2000e-2(a). Accordingly, the second amended complaint, like the amended complaint, alleges that Plaintiff was constructively discharged in violation of Title VII and section 1981 because of a single incident of alleged racial discrimination. (*See* Dkt. 32 ¶¶ 10–14; *see also* Dkt. 31 at 10–15.) As the court previously explained, that cannot meet her burden. *See Mahone v. CSX Transp., Inc.*, 652 F. App'x 820, 824 (11th Cir. 2016); *see also Faragher*, 524 U.S. at 788; *Adams*, 754 F.3d at 1245–55, 1257; *Gupta*, 212 F.3d at 579–86. (*See* Dkt. 31 at 10–15.)

In any case, the conduct alleged in the second amended complaint, considered collectively, is not so extreme that it compensates for the infrequency of Davis' alleged conduct. *See Adams*, 754 F.3d at 1253–54 (holding that although the complaint alleged an isolated incident of racial discrimination, the act was so severe that a reasonable jury could find that the employee's work environment was objectively hostile). Although Plaintiff claims that the escalation in Davis' conduct caused her to fear for her safety, the Eleventh Circuit distinguishes between physically threatening conduct, which can support a constructive discharge claim, and offensive utterances, which cannot. (*See* Dkt. 32 ¶ 15; Dkt. 34 at 3.) *See Buckley v. Sec'y of the Army*, 97 F.4th 784, 797 (11th Cir. 2024) ("In evaluating the objective severity of [alleged] harassment, [courts] consider . . . whether the conduct is physically threatening or humiliating, or a mere offensive utterance."). Plaintiff contends that the second amended complaint states a claim for race discrimination, as the allegations contained therein depict an

escalation in Davis' conduct. (Dkt. 34 at 3.) Yet the timeline of events outlined in the second amended complaint falls short of what the Eleventh Circuit has considered to be sufficiently threatening. (*See* Dkt. 32 ¶¶ 7–14.) *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1303–04 (11th Cir. 2012) (finding that a genuine issue of fact existed as to whether the plaintiff endured a hostile work environment, where they alleged that their coworkers repeated placed banana peels on their truck, wore confederate shirts, made racist comments, and threatened physical confrontation over the course of two weeks at the end of the plaintiff's employment); *Fortson v. Carlson,* 618 F. App'x 601, 607–08 (11th Cir. 2015) (holding that five statements, which included threats that the plaintiff would be "taken out" and "taken care of," spanning six months did not constitute an escalation of threatening incidents and thus could not support a hostile work environment claim). Here, the second amended complaint contains allegations concerning three isolated incidents spanning six months. (*See* Dkt. 32 ¶¶ 8–14.) The facts alleged in the second amended complaint do not depict an escalating pattern or direct or threatening behavior, like that which the Eleventh Circuit generally looks for when determining whether a plaintiff has plausibly alleged that they had an objectively reasonable fear of physical harm. *See Jones*, 683 F.3d at 1303–04; *Fortson*, 618 F. App'x at 608.

Finally, as to Plaintiff's allegations of humiliation, the Eleventh Circuit's decision in *Hipp* is instructive. *See* 252 F.3d at 1208. In that case, the plaintiff alleged that a company executive twice confronted him. *See id.* at 1233. During the first encounter, the executive verbally attacked him. *Id.* During the second, the executive

publicly berated and humiliated the plaintiff in front of his colleagues. *Id.* The court held that the executive's conduct did not constitute a constructive discharge, as employees are not guaranteed a stress-free working environment. *See id.* at 1233–34; *see also Terrell v. Sec'y, Dep't of Veterans Affs.*, 98 F.4th 1343, 1356 (11th Cir. 2024) ("The standards for judging hostility are intended to be sufficiently demanding to ensure that Title VII does not become a general civility code."); *Lopez v. Target Corp.*, 676 F.3d 1230, 1233, 1235 (11th Cir. 2012) ("[Section] 1981 is not a general civility code."). Here, Plaintiff contends that Davis humiliated her when he yelled at her once. (Dkt. 32 ¶ 9.) Considering the Eleventh Circuit's reasoning in *Hipp*, the allegations presented in the second amended complaint do not plausibly suggest that Plaintiff was constructively discharged. *See Hipp*, 252 F.3d at 1233. For all these reasons, Plaintiff has not plausibly alleged that Defendant violated Title VII or section 1981.

In Count II, Plaintiff alleges that Defendant violated the ADEA when it discriminated against her because of her age. (*See* Dkt. 32 ¶¶ 22–26.) The ADEA prohibits employers from discriminating against employees because of their age. 29 U.S.C. §§ 623(a)(1), 631(a). Like a Title VII or section 1981 claim, an ADEA discrimination claim needs only to "provide enough factual matter to plausibly suggest intentional discrimination." *Buchanan v. Delta Air Lines, Inc.*, 727 F. App'x 639 (11th Cir. 2018) (quoting *Surtain*, 789 F.3d at 1246). A Plaintiff must also plausibly allege that age was the "but-for" cause of an adverse employment action. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009).

To start, Plaintiff's ADEA claim fails to state a claim because it relies on the same constructive discharge theory as her other claims. (*See* Dkt. 32 ¶ 25.) *See Medearis v. CVS Pharmacy, Inc.*, 646 F. App'x 891, 898 n.4 (11th Cir. 2016) ("The standard for constructive discharge is the same in both the Title VII and ADEA contexts."); *see also Hipp*, 252 F.3d at 1231 ("The threshold for establishing constructive discharge in violation of ADEA is quite high. In evaluating constructive discharge claims, [courts] do not consider the plaintiff's subjective feelings. Instead, [they] employ an objective standard."). Here, Plaintiff identifies a single ageist comment, which she contends shows that Defendant constructively discharged her in violation of the ADEA. (Dkt. 32 ¶ 8.) As the court explained in connection with Plaintiff's race discrimination claims, a single incident of discrimination will not plausibly suggest that Plaintiff endured a hostile work environment, let alone suffered a constructive discharge. *See Faragher*, 524 U.S. at 788; *Adams*, 754 F.3d at 1245–55, 1257; *Gupta*, 212 F.3d at 579–86. (*See* Dkt. 31 at 10–15.) Indeed, to plausibly suggest that Defendant constructively discharged her in violation of the ADEA, Plaintiff must plead facts illustrating that her constructive discharge was motivated by age-related animus. *See Poole v. Country Club*, 129 F.3d 551, 553 (11th Cir. 1997) (noting that a plaintiff must ultimately prove that their constructive discharge was motivated by age-related animus to succeed on an ADEA claim); *Hellums v. Webster Indus.*, 97 F. Supp. 2d 1287, 1296 (M.D. Ala. 2000) ("To succeed on an ADEA claim based on constructive discharge, a plaintiff must make a twofold showing: that the employer's actions were impermissibly motivated by the plaintiff's age, and that these actions made the plaintiff's working conditions so

intolerable that resignation is deemed involuntary." (quotation omitted)); *Carr v. Cohen*, 44 F. Supp. 2d 1240, 1246 (N.D. Ala. 1999) ("To succeed on an ADEA claim based on constructive discharge, a plaintiff must make a twofold showing: that the employer's actions were impermissibly motivated by the plaintiff's age, and that these actions made the plaintiff's working conditions so intolerable that resignation is deemed involuntary." (quotation omitted)); *Cook v. American Gen. Life & Accident Ins. Co.*, 952 F. Supp. 1505, 1512 (M.D. Ala. 1996) ("To succeed on a constructive discharge claim [under the ADEA], a plaintiff must show that the employer's actions were impermissibly motivated by the plaintiff's age." (quotation omitted)). Because Plaintiff has not pled facts to plausibly allege that Defendant made her working conditions so intolerable because of her age, Plaintiff has not plausibly alleged that she was constructively discharged in violation of the ADEA. *See Poole*, 129 F.3d at 553; *Hellums*, 97 F. Supp. 2d at 1296; *Carr*, 44 F. Supp. 2d at 1246; *Cook*, 952 F. Supp. at 1512. Accordingly, Count II must be dismissed. Still, other shortcomings merit discussion.

To state a claim for age discrimination under the ADEA, a plaintiff must either plead facts that indicate that she "was replaced by a substantially younger individual" or that she "was treated differently than a similarly situated, substantially younger individual." *Polakovic v. Univ. of Miami*, 816 F. Supp. 3d 1304, 1313 (S.D. Fla. 2026) (quotation omitted). The second amended complaint does not do either. (*See* Dkt. 32.) According to the second amended complaint, Defendant "has not hired any individuals in Plaintiff's age group" since Plaintiff left and has hired individuals that

are "substantially younger" than her to perform duties like those which she used to perform. (*Id.* ¶ 17.) Given the conclusory nature of these allegations, the court must speculate as to how old Plaintiff's replacements were. *See Twombly*, 550 U.S. at 545 ("[A] plaintiff's obligation to provide the grounds of [her] entitle[ment] to relief requires more than labels and conclusions."); *Arafat v. Sch. Bd. of Broward Cnty.*, 549 F. App'x 872, 875 (11th Cir. 2013) (affirming the dismissal of an ADEA claim that "did not allege any facts to show that a younger, non-protected individual was actually hired instead"); *Hughley v. Upson Cnty. Bd. of Comm'rs*, 696 F. App'x 932, 935–36 (11th Cir. 2017) (finding that plaintiff's complaint failed to state a claim under the ADEA, as it alleged no facts to plausibly suggest "that a substantially younger person filled [the plaintiff's] position . . . or that [the plaintiff's] age played a role in the decision not to reappoint [them]") (internal quotations and citations omitted)). Indeed, the mere fact that Defendant has not hired any similarly aged employees since Plaintiff's discharge does not necessarily mean that she was replaced by someone substantially younger than her. *See Arafat*, 549 F. App'x at 875; *Gomez v. Conviva Physician Grp., LLC*, No. 25-14359-CIV, 2026 WL 466224, at *5 (S.D. Fla. Feb. 2, 2026) (holding that plaintiff who "summarily assert[ed] that he was replaced by a younger physician's assistant but he allege[d] no other facts regarding his replacement" did not provide sufficient evidence to survive a motion to dismiss); *Tarnoff v. iSolved, Inc.*, No. 6:25-CV-00955-PGB-LHP, 2025 WL 2432529, at *3 (M.D. Fla. Aug. 23, 2025) (finding that a plaintiff who did not allege any facts regarding their replacement did not plausibly support an inference of age discrimination); *Nunez v. City of Pompano Beach*,

No. 20-62626-CIV, 2021 WL 9957861, at *4 (S.D. Fla. Apr. 20, 2021) (holding that a plaintiff's vague allegations that the defendant retained and hired "less qualified individuals who were under the age of 40" following the plaintiff's termination, fell "woefully short of alleging that a substantially younger person filled the position from which [the plaintiff] was discharged").

Plaintiff also alleges that Davis treated her differently from her younger colleagues, as he "refused to answer [her] work-related questions" while "simultaneously assisting younger employees." (*See* Dkt. 32 ¶¶ 8, 24.) These allegations are equally unhelpful to Plaintiff, as they are conclusory and thus fail to plausibly suggest that Davis was less willing to assist Plaintiff because of her age. (*See id.* ¶¶ 8, 24.) *See Gross*, 557 U.S. at 176 ("To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."); *Dawson v. Wal-Mart Stores E., LP*, 160 F. Supp. 3d 1303, 1304 (N.D. Ala. 2016) (dismissing an ADEA claim because the plaintiff failed to allege that their age was the but-for reason for their termination); *Agostino v. Lee Cnty. Bd. of Cnty. Commissioners*, No. 2:17-CV-236-FTM-99CM, 2017 WL 2930807, at *3 (M.D. Fla. July 10, 2017) (finding that a plaintiff failed to state a claim under the ADEA because she pled facts that she was over forty and qualified for her job when she was replaced by a thirty-year old and identified that she was treated differently from her counterparts, but did not show that difference was because of her age). At bottom, Plaintiff's one-sentence allegation is nothing more than "a formulaic recitation of the elements of a cause of action," *Iqbal*, 556 U.S. at 678 (citation

modified), and thus does not "allege[ ] facts adequate to raise her right to relief above a speculative level," *Buchanan*, 727 F. App'x at 642. Therefore, Plaintiff has not alleged enough facts to state a claim for age discrimination under the ADEA. *See Buchanan*, 727 F. App'x at 642; *Polakovic*, 816 F. Supp. 3d at 1313.

**CONCLUSION**

Accordingly:

1. Defendant's motion to dismiss (Dkt. 33) is **GRANTED.** The second amended complaint (Dkt. 32) is **DISMISSED without PREJUDICE**.
2. Plaintiff may file a third amended complaint on or before September 4, 2026, if she can do so in good faith.
3. Should Plaintiff file a third amended complaint, she may not assert new causes of action, unless she first files a motion establishing good cause under Federal Rule of Civil Procedure 16(b)(4), and obtains the court's consent, as the deadline to amend pleadings has now passed. (*See* Dkt. 22.) If the third amended complaint brings a claim without correcting all pleading deficiencies identified in this order related to that claim or if the third amended complaint fails to comply with any of the directions in this order, the court may dismiss that pleading without notice to Plaintiff.

**ORDERED** in Orlando, Florida, on August 14, 2026.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record